**FORRESTER et al.**
v.
**UNITED STATES.**
No. 14417.

United States Court of Appeals
Fifth Circuit.

Feb. 23, 1954.

Rehearing Denied March 20, 1954.

Wesley R. Asinof, J. O. Ewing, Atlanta, Ga., for appellants.

J. Ellis Mundy, U. S. Atty., Harvey H. Tysinger, Lamar N. Smith, Asst. U. S. Attys., James W. Dorsey, U. S. Atty., Atlanta, Ga., F. Douglas King, Asst. U. S. Atty., Newman, Ga., for appellee.

Before HUTCHESON, Chief Judge, and BORAH and RUSSELL, Circuit Judges.

BORAH, Circuit Judge.

Appellants Ralph W. Forrester, John L. Ellenburg and Kelly B. Harris, the defendants below, were tried and convicted in the district court by a judge and jury on a two count indictment. Count one charged that the defendants did wilfully and knowingly engage in the business of accepting wagers and conducting a lottery for profit without payment of the special tax as required by Section 3290 of the Internal Revenue

Code, 26 U.S.C.A., and did aid and abet each other and a person or persons to the grand jurors unknown, to do the same thing without paying this tax. Count two charged in part that the defendants did engage in the business of accepting wagers and conducting a lottery for a profit without registering with the Collector of Internal Revenue as required by Section 3291 of the Internal Revenue Code.

The questions for our determination on this appeal relate principally to the sufficiency of the evidence. More specifically appellants contend that the trial judge should have granted their motion for a judgment of acquittal because: (1) the Government's evidence did not show that either of the three defendants were engaged in the business of accepting wagers or that they conducted a lottery for profit after the effective date of the Federal tax and registration law, i. e., November 1, 1951; (2) the Government failed to prove a lottery was in operation subsequent to November 1, 1951; (3) the Government failed to connect up or identify certain lottery tickets introduced in evidence as those found at the time of arrest of defendants Harris and Ellenburg; (4) the Government failed to prove any case against the defendant Forrester, either by direct or circumstantial evidence. In addition to these specifications appellants also claim that the trial court erred in permitting the prosecution to prove by Robert Joiner, a Government witness in rebuttal that another Government witness, a Mrs. Wilcox had made statements to said witness, out of the presence of the defendants, concerning the facts to which she had testified in the trial of the case.

The material facts are these: On November 7, 1951, defendant Forrester came to the country residence of Mrs. Wilcox in DeKalb County, Georgia, and told her that he would like to rent a room for business purposes, to do some office work. He stated that he was renting the room for some people or his people, that he would be there only a couple of hours in the afternoon, and offered to pay $35.00 per week. These negotiations were had on a Wednesday. Mrs. Wilcox agreed to accept the offer and Forrester thereupon paid her $25.00 rental for the balance of that week. For the week which followed he paid the stipulated rental of $35.00. Thereafter and between November 7th and November 15th, Forrester came to the house on several occasions. During this period Mrs. Wilcox also saw the defendants, Harris and Ellenburg, come to her house. They would come in two cars in the afternoon about 2:00 P.M. and would stay about two hours. When they came they brought adding machines with them. Mrs. Wilcox could hear the machines when they were being operated and she had seen them through the door of the room. However, she did not know what they were doing as she was never in the room when the defendants were there and after they would go they would leave nothing in the room. Mrs. Wilcox frequently saw two women come to the room with the defendants Harris and Ellenburg. She had seen the women before as they like Forrester sometimes ate at the restaurant where she worked. However, she never asked either the men or the women what they were doing. Mrs. Wilcox never saw Forrester in the company of the other two defendants when they came to her house but they would be together some of the time as Forrester would come later after they were there though he never stayed after they had left.

On November 16, 1951, Captain Howard of the DeKalb County police force, acting upon information that a lottery was being checked at the Wilcox residence, went there with officers Hicks, Spruell and Broome at about 1:00 or 1:30 in the afternoon. They went in two cars. Hicks and Broome were in the police car and they drove to within a mile of the residence and then stopped on a side road while Spruell and Captain Howard drove on in Spruell's car to where they had a view of the house. When the two cars they were looking

for showed up at the residence Spruell and Captain Howard went back and got in the police car and all then proceeded to the Wilcox home. The defendant Harris was standing on the side porch and, on seeing the police car started running. Broome and Spruell ran after him and Spruell finally caught him. At the same time an unidentified man ran away from the house and Hicks ran after him but failed to catch him. Captain Howard and Broome then went in the house and found and arrested Mrs. Wilcox and defendant Ellenburg. In the room, which contained a bed and several chairs, they found several card tables pushed together on which there were three adding machines and several paper sacks of tickets, some with figures on "just flat paper" but most of them were yellow tickets. There were also some notebooks which contained hyphenated figures which is the manner in which the numbers appear on lottery tickets.

The officers gathered up the tickets under Captain Howard's supervision and put them in a paper sack. Hoyt Hutton, chief of the DeKalb County police, then arrived on the scene and Captain Howard and Chief Hutton placed the sack of tickets in the latter's car. The sack was then taken back to Decatur by Chief Hutton and placed by him in his evidence locker, a secured closet in his personal office. From that time to the time of the trial the tickets were removed from the closet twice; once when Chief Hutton took them with him to the office of the U. S. Commissioner where they were not used, and once when he brought them before the Federal Grand Jury. The contents of the sack were never initialed.

There was testimony to show that the tickets here involved were similar to lottery tickets, and that the paper and other paraphernalia seized were such as are customarily used in the operation of a lottery. There was also testimony as to how a lottery scheme operated and how these tickets appeared to fit in with the type generally used. Captain Howard was shown the tickets and sack which was marked for identification as Government exhibit number 2, and testified that they were the same articles seized at the Wilcox house but on cross-examination he stated that he could not identify any ticket in the sack as coming out of the house on that day, but that the sack was very similar. Chief Hutton testified that this Government exhibit was part of the paraphernalia that was taken out of the room in the Wilcox residence and that it had remained in his possession continuously until that morning when he gave it to Captain Howard who brought it to court for the trial. This exhibit along with all others relating to the property seized was offered and admitted in evidence without objection from defendants' counsel.

Mrs. Wilcox testified as a witness for the government. On cross-examination she stated that she knew that she would not be prosecuted in certain charges pending against her if she testified in the case against Forrester. On redirect examination she stated that Treasury Agent Joiner and two named investigating officers had promised her that she would not be prosecuted for any offense, state or federal, if she testified and told the truth. The court thereupon permitted the assistant district attorney, upon his claim that he had been entrapped and surprised, to ask the witness leading questions and, in effect, to impeach her testimony on this point. Upon this examination there was exhibited to her a written statement which she had previously given an investigating officer in which she acknowledged that she had been advised of her constitutional rights and that anything she said could be used against her in a criminal prosecution. Thereafter, she acknowledged that three named Government agents had told her that there was nothing they could do to prevent her from being prosecuted but that it would be best for her to tell the truth. The prosecution then placed Joiner on the witness stand and over defendants' objection he was permitted to testify that the statement made by the witness Wil-

cox, which was not read or exhibited to the jury or accepted in evidence, was made by her of her own free will, without promise of reward, etc.

■ We have no doubt that the verdict of the jury was supported by substantial evidence. The facts and circumstances proven, together with the reasonable inferences which the jury were entitled to draw therefrom, clearly authorized if it did not compel the conclusion that the defendants were on November 16, 1951 engaged in the business of conducting a lottery as charged in the indictment.

■ The contention that the Government did not connect up or identify the lottery tickets which were introduced in evidence is wholly lacking in merit as the evidence which we have detailed indubitably shows. If more need be said we point to the fact that defendants' counsel did not interpose any objection to the reception of these lottery tickets in evidence. Also, and as a clear indicia that there was hardly room for doubt in anyone's mind that the tickets had been shown to be those seized by Captain Howard, counsel in arguing his motion for acquittal conceded that the Government "did prove the continuity of the possession of the sacks * * *."

■ Finally appellants assign error to the ruling of the trial court in permitting the Government to elicit from the witness Joiner that Mrs. Wilcox had made statement concerning the facts of the case which were consistent with and corroborative of what Mrs. Wilcox had already testified to at the trial. It is the established rule that impeachment of one's own witness may be resorted to where his testimony has surprised the party offering him. However, the impeaching matter is to be limited to the point of surprise and even where there is a real surprise it is not proper to permit the impeachment testimony to go beyond the only purpose for which it is admissible, i. e., the removal of damage the surprise has caused. Apodaca v. United States, 5 Cir., 200 F.2d

775. We think the court properly permitted Government counsel to lead the witness Wilcox upon his plea of surprise; but after this examination had resulted in the witness interpreting her previous unfavorable testimony in a way favorable to the Government, it was not then proper for the court to permit the Government to put the witness Joiner on the stand to elicit what was neither more nor less than corroborative testimony. While we think this evidence was objectionable and should have been excluded we are clearly of opinion that it was not such an error as would affect the substantial rights of the defendants and therefore should be disregarded.

Since we find no prejudicial error in the record the judgment is

Affirmed.